## C. B. Fox *v.* Lee Baggett.

[58 South. 481.]

1. Sales. *Warranty. Waiver of breach. Evidence. Necessity of objection.*

Where a buyer purchased a certain amount of cotton seed cake to be delivered to him at a certain point, quantity and quality being guaranteed by the seller, at destination and the buyer paid for more cotton seed cake than he received, he was entitled to collect from the seller the excess so paid.

2. Same.

In such case it is immaterial that the cotton seed cake which was shipped loose in cars, was sacked by the buyer before it was weighed or that it was removed before it was delivered to the buyer at destination, if it sufficiently appears that all of the cake which reached the destination was sacked and weighed by the buyer.

3. Appeal and Error. *Evidence. Necessity of objection.*

Where no objection was made to the introduction of evidence in the court below, error in its admission is waived.

Appeal from the circuit court of Lafayette county.

Hon. W. A. Roane, Judge.

Suit by C. B. Fox against Lee Baggett. From a judgment for defendant, plaintiff appeals.

The appellant was plaintiff in the court below, and appellee was defendant. The declaration alleged that plaintiff purchased of defendant, one hundred and fifty tons of loose cotton seed cake at twenty-three dollars a ton of two thousand, two hundred and forty pounds, to be delivered at Shipside Terminals, New Orleans, La., weights and quality guaranteed by seller at American destination." In accordance with this contract, three carloads of loose cake were shipped to plaintiff, and drafts forwarded with bill of lading attached, which

drafts were paid. It is alleged that these cars were billed to plaintiff and were stopped en route at sacking plants in city of New Orleans, where the contents of the cars were sacked and the cars resealed and sent to the Shipside Terminals. The contents of the cars were weighed after sacking, and there was a shortage of thirteen tons. Plaintiff sues to recover the value of this shortage. It is alleged that the sale and delivery was subject to the rules and regulations of the Interstate Cotton Seed Crushers' Association. One of the rules of the association is that the "certificates so taken and properly sworn to shall determine weight and in all cases where cake is sold, delivered, or weights guaranteed at destination, provided the shipment is not broken in transit." Appellee contends that the shipment was broken in transit by reason of being sacked, but appellant contends that contract allows inspection, and further that it provides that the cars shall be delivered at Shipside, and that "weights were guaranteed at American destination," which means Shipside, under the contract. It is further contended by appellant that, since the contract specifies delivery at Shipside Terminals, the defendant must deliver the amount contracted for at such destination. On motion of the defendant, evidence of the plaintiff was excluded, and a peremptory instruction given to find for the defendant. Plaintiff, in his depositions, quotes figures from accounts and memoranda kept by a clerk in his office, showing weights of cars and cake. And one Douglas, a public weigher, in his depositions also quotes figures from books and memoranda kept by an employee of his; but there was no objection at the time to this testimony.

*Edgar Webtser,* for appellant.

We contend, first: That the weight certificates, pages 11, 12 and 13, determine the actual weight of the contents of every car. Because by the rules and regula-

tions of the Cotton Seed Crushers' Association, such "certificates so taken and properly sworn to shall determine weight in all cases where cake is sold 'delivered' or 'weights guaranteed' at destination, provided the shipment is not broken in transit." Rule 8, Sec. 5, page 38 of this record. In this particular instance the contract specially stipulated that "weights guaranteed at American Destination," pages 7 and 28, which destination, under the contract, was Shipside Terminals of the Illinois Central Railroad, New Orleans, La. That being true, such certificates determine the actual contents of the several cars. Counsel for appellee contend that these cars were broken in transit. However, we submit under a reasonable construction of the contract of sale, and the rule and regulations of the Cotton Seed Crushers' Association, which said regulations, together with all the customs of the port, incident thereto, were incorporated into the same, the shipment was not broken in transit.

Because (a), the contract "allows inspection," and the cars were to be delivered at Shipside, pages 7 and 28. To allow inspection is to permit the seal of the car to be broken, the port inspector to go into and upon the contents of same, and to examine them and to take samples and sacks at random from the car. "Delivered Shipside" signifies that the cars reached their destination when, and only when, they are switched alongside a ship at the wharf. The appellee, familiar with the customs of the port and the places of delivery, knew, or by the exercise of reasonable diligence ought to have known, that the cake was intended for export, and for that reason had to be sacked, either by hand at the place of delivery, or at some sacking plant, intervening. See answer to Xinter, No. 7 of C. B. Fox. There was no rule of the association governing the sacking and weighing of the cake, neither was there any stipulation in the contract, relative to the sacking and weighing, hence in

the absence of both, the custom of the port prevailed. See answer to Xinter interrogatory No. 9 of C. B. Fox, page 23. And had the custom of the port been disregarded the contents of the cars could not have been weighed, and would have placed the buyer at the mercy of the seller. Answer to Xinter interrogatory 11, page 24. Therefore, the contract contemplated a breaking of the seal, a sacking, and a weighing, and such having been done in accordance with the rules, customs and import of the contract, it did not constitute a breaking in transit, in the meaning and import of the rule *supra.*

Because (b), we have in the rules and regulations of the Cotton Seed Crushers' Association the definition of what is recognized to be a "breaking in transit." See General Rules, rule 13, Sec. 1, page 39, "All offers, sales or purchases of cotton seed products shall be understood, unless specified to the contrary, to be f. o. b. cars at the mill," . . . "loss or damage by accident or wreckage in transit to be at buyer's risk." From this rule, it is evident if a car is wrecked, damaged, derailed or destroyed by the act of God, or by the railroad company, and the contents disturbed thereby, then the car has been "broken in transit," and certificates taken of the remaining contents, if any would not and ought not to determine the amount billed out by the seller. Otherwise it is not considered broken in transit, and an inspection, sacking and weighing does not constitute such.

Appellant further contends that these cars at the time of sacking were not his, but that they were still in the custody of the railroad company, both they and their contents, and that the railroad company was the agent of Lee Baggett, and not the agent of C. B. Fox, rule 13, Sec. 1, provides "unless specified to the contrary," all sales, etc., "shall be understood to be f. o. b. cars at the mill," but in this particular contract, page 28, it was specified that the cars should be "delivered Shipside Illinois Central Railroads Terminals, New Orleans, La.,"

and consequently these cars were not delivered f. o. b. at the mill; and furthermore, the railroad company was the agent of Lee Baggett, and being the agent of him, any loss, damage or other accident affecting the contents of the cars before they reached Shipside would be chargeable directly to the negligence of the railroad company, and cannot be urged as a defense to any action between C. B. Fox and Lee Baggett, lessee of the Carrollton oil mill. It is true that Mr. Fox in his deposition, answer to Xinter interrogatory No. 9, page 23, says that the cars were sacked by his instructions yet he also states that it was the custom of the port to so do. And this being the custom, and nowhere is it denied, his assuming authority to have the same sacked in accordance therewith, never absolved the railroad company from its duties to the shipper, and never terminated the relation of agency existing between Lee Baggett and the railroad company. Until the cars were rolled down to Shipside, or Stuyvesant Docks, page 27,—their contents were under the care of the railroad company. Answer to Xinter interrogatory 20, page 26, and likewise subject to the orders of Lee Baggett.

Counsel for appellee will doubtless contend that appellant is seeking to hold appellee responsible for waste caused by the process of sacking. We contend that Mr. Fox's testimony, answer to Xinter interrogatory 17, pages 25 and 26, shows that at Harahan's sacking plant there was no waste or deduction of the original contents in this process, when he says, "I know that all meal and meal dust is gathered up, and put into sacks." Could language be more emphatic or expressive?

Upon a motion to exclude the testimony not only the facts expressly testified to but all inference necessarily and logically to be deduced therefrom are to be taken as true, against whom such motion is interposed. *Alexander* v. *Zeigler*, 84 Miss. 560; *Rolling* v. *Sauce Co.*, 53 So. 394.

*Kimbrough & Slough,* for appellee.

Was the evidence sufficient to warrant a recovery? Where is the proof that the three cars were billed out of Carrollton, Miss., on "false and fictitious" weights as alleged? Where is the proof that the certificates of weights of Priday and Douglass "represent the entire contents of the three above mentioned cars just as they left Carrollton, Miss.," as alleged in the declaration. The certificates on their face only undertake to show the weights of so many "sacks of oil cake," when the original shipment shows and the contract called for only "loose cake." Said certificate of weights also show that in two instances the sacks of oil cake so weighed were taken out of cars other than the original shipment, showing clearly that the shipment of two cars had unquestionably been tampered with and "broken in transit," and that the contents of all three shipments had been tampered with and passed through the hands of the sackers. Thos. Douglass of the firm of weighers whose certificates are relied on in this case confirms these facts in his deposition. See page 33, *et seq.,* and nowhere in his testimony is it stated that the entire contents of the three cars were represented in those certificates. We respectfully urge a careful reading of his testimony. He says "the weights therein are true and correct as per certificates issued," that his sales were correct on that day, that the weight certificates as rendered include every sack weighed in each car. He does not even say that every sack in the car was weighed in each instance when asked that specific question by appellant. See page 35.

These certificates of weight then are not to be taken as evidence for two reasons: On their face they do not represent the original shipments—the evidence shows the cars to have been "broken in transit," and under the rules involved by the contract they cannot be taken as true and determinative of the weights of the original shipments.

The contents of the two cars passing through the Harahan sacking plant by order and the instructions of appellant, were not weighed there. No testimony is adduced to show that all the contents of these two cars were sacked before being transferred to other cars, or that no waste was committed in the process. Likewise the third car, the contents of which were supposed to be sacked at the docks, was not weighed when sacked, although sacked by a public weigher, and we have the testimony of no one as to how that sacking was done, whether all the cake was sacked and whether no waste was committed. This broken link in the chain of evidence so necessary and important, without which the case could not be "made out" is undertaken to be supplied by appellant's testimony as general processes and customs, who speak of the general process of sacking cake, but not how this cake was sacked, and who justifies his failure to have the shipments weighed before they had passed through the hands of the sackers, on the ground that he was permitted to do this by virtue of a "custom of the port," which "processes" and customs are not anywhere shown to have been known to appellee, or to have been in contemplation of the parties to the contract.

Admitting in one breath that he ordered the sacking of the loose cake and had a right to do it according to the "custom of the port," in the same breath he declines responsibility for his acts, contends that the railroad company in permitting the sacking was acting as the agent for appellee, and if any loss resulted in weights through the negligence, incompetency or rascality of the sackers, the appellee must suffer the loss. We do not think this argument stands the light of reason.

There is no need for a proof of custom to interpret this contract. It provides its own basis of interpretation by specifying "According to the rules and regulations of the Interstate Cotton Seed Crushers' Associa-

tion." The custom relied upon by appellant is not sufficiently proven; is neither certain, uniform or reasonable, and is certainly inequitable to the shipper. In the case of *Telegraph Co.* v. *Willis,* 93 Miss. 552, on page 552 we find this language in the opinion of the court and endorsed by the court: "usages and customs cannot be proved to contravene a rule of law, or to alter or contradict the express or implied terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof. When the terms of a contract are clear, unambiguous and valid, they must prevail, and no evidence of custom can be permitted to change them." Appellant accepted these shipments at their billed weights when he diverted them into the hands of the sackers without weighing them, and changing their identity without the knowledge or consent of appellee.

Smith, J., delivered the opinion of the court.

If the evidence introduced by appellant in the court below be true, he paid for more cotton seed cake than he received, and, consequently, he is entitled to collect from appellee the excess so paid by him. It is immaterial that the cotton seed cake which was shipped loose in cars was sacked by appellant before it was weighed, and it is immaterial that it was removed from the cars in which it was originally shipped before it was delivered to appellant at Shipside, for it sufficiently appears that all of the cake which reached New Orleans was sacked and weighed by appellant.

It may be that some of the evidence contained in the two depositions introduced in the court below by appellant is hearsay, as to which we express no opinion, for the reason that, since no objection of any character to these depositions, or any portions thereof, was interposed in the court below by appellee, this defect, if such there is, in the evidence was waived. Had a seasonable

objection been interposed, the deposition of persons having actual knowledge of the matter could have been taken.

The court therefore erred in granting to appellee the peremptory instruction.                              *Reversed.*